THE STATE *ex rel.* DOUD *et al.* v. LESUEUR.

### In Banc, December 15, 1896.

1. **Mandamus: OFFICER.** One asking for a writ of *mandamus* against a public officer must have a clear legal right to the specific service which he seeks to have performed.

2. **Election : NOMINATIONS OF OFFICERS: ELECTOR'S CERTIFICATE: SECRETARY OF STATE.** Unless an elector's certificate of the nomination of candidates for presidential electors and state officers is properly certified and acknowledged by the requisite number of electors, the secretary of state will not be compelled to file it and place the names purporting to be certified on the official ballot.

3. ———: ———: ———: ———. After a certificate of nomination of "silver party" candidates which called for presidential electors who "will appear on the democratic ticket" had been signed by a number of voters, four of the democratic electors resigned and their places were filled by nominees of the populist party. Then a new silver party certificate of nomination was prepared, which contained the names of all the democratic electors, including the four democratic-populist candidates, and to this certificate was annexed the signatures which had been detached from the original petition. *Held,* the names so attached could not be considered in determining whether the new certificate had the one thousand names required by section 4763, Revised Statutes, 1889.

*Mandamus.*

WRIT DENIED.

*Upton M. Young* for relator.

*R. F. Walker,* attorney general, and *R. L. McLaran* for respondent.

GANTT, J.—On the twenty-second day of October, 1896, the relator Doud filed his petition in this court praying for a writ of *mandamus* directed to the secretary of state commanding and requiring him to accept and

file the certificate and petition of nomination of the "so-called" silver party of the state of Missouri under the caption of "Silver Party Ticket," and to cause it to be printed and placed on the official ballot, duly certified, together with the other candidates to be voted for on November 3, 1896, at the general election to be held on said day.

Relator alleged that on the thirteenth day of October, 1896, he presented a petition of nomination of certain candidates as the candidates of the "silver party" for the various state offices and for presidential electors, duly signed and acknowledged by eleven hundred and sixty-six qualified voters of the state of Missouri to the respondent, secretary of state, and requested him to file the same and place said candidates on the official ballot under the caption of "*Silver Party*" but the respondent refused to file or recognize the said nominees and place them on said ballot.

In his return to the alternative writ the secretary of state traversed the allegations of the writ; denied that the petition was signed, acknowledged and certified as the law requires; that ninety-four of the names now appearing on said petition were not signed to the petition to which they are now attached but were appended to another and different petition, and have since been detached therefrom and attached to the petition now presented to the court, and that the petition presented to respondent did not contain the requisite number of qualified electors duly acknowledged and certified; that said petition for the nomination of Hon. James S. Botsford, for judge of the Kansas City court of appeals was signed by residents and citizens of that portion of the state over which the St. Louis court of appeals has jurisdiction, and that said petition for the nomination of Hon. R. E. Rombauer, the republican nominee for judge of the

St. Louis court of appeals, was signed by citizens of the state living wholly within the territorial jurisdiction of the Kansas City court of appeals.

He further alleged that the caption "Free Silver Party" was fraudulent, misleading, and contrary to and in violation of section 4773, Revised Statutes, 1889, that said caption was calculated to mislead and deceive the electors, in this, that said ticket contained the names of democratic and populist electors nominated both at large and from the various congressional districts in the state, and also contained the nominees of the republican state convention for the various state offices to be filled at said election on November 3, 1896; that said ticket contains the names of the republican nominees for judge of the two courts of appeals; that said nominees of the republican party were nominated and selected upon a platform in direct contravention of the position and policy of the "silver party" as set forth in the caption of said petition, presented to respondent for filing and certification; that if certified on the official ballot the electors of the state would be misled thereby and fraudulently induced to vote for *"gold standard"* candidates.

Depositions were taken and stipulations filed as to evidence and the cause heard and argued on the twenty-sixth day of October and the peremptory writ was denied. The urgency of the case was such that the court considered it at once, but owing to the pending call of the docket was unable to hand down a written opinion at the time.

It appeared in proof that prior to September 26, 1896, the relator Doud and others in concert with him conceived the idea that they could greatly enhance the chances of Mr. Lewis, the republican nominee for governor, by having what was known as a "silver party" ticket placed upon the official ballot. That ticket was

to be headed by the democratic electors, to be followed by all the republican nominees for state offices.     With this purpose in  view, inasmuch  as there was no party known by that name in Missouri and  no  such  party had cast three per  cent  of  the  votes  at  the  last  general election, resort was had to a certificate of  nomination by electors as permitted by section 4763,  Revised Statutes, 1889.

This petition was circulated and ninety-two persons appear to have signed the same prior  to September 26. That petition contained the following caption:

### "SILVER PARTY TICKET.

"*To Hon. A. A. Lesueur, Secretary of  State, Jefferson City, Mo.*

"The undersigned electors of the state of Missouri, residents  of  the  county  of——therein,  pursuant  to the election laws of  said  state, do  hereby  certify that the  persons  hereinafter  named  for  nomination  are the candidates of  the  national silver party (which has ·declared in favor of  a  distinctly  American  financial system; and  unalterably  opposed  to  the  single  gold standard; and  demand  the  immediate  return  to  the constitutional standard of  gold  and  silver, by the restoration  by  this  government, independently  of  any foreign power, of the unrestricted coinage of both gold and silver into  standard  money  at  the ratio of  sixteen to one, and on terms of  exact  equality as they  existed prior to 1873; the silver coin  to be of full  legal  tender equally with  gold  for  all  debts  and  dues, public  and private; and  demand such  legislation  as  will  prevent for the future the distinction of the legal tender quality of any kind of money by private contract) for the offices set opposite their respective names  herein, to be voted

State ex rel. v. Lesueur.

for at the ensuing general election to be held on Tuesday, November 3, 1896, to wit:

| OFFICE. | NAME. | RESIDENCE. | OCCUPA-TION. |
|---|---|---|---|

For president, William J. Bryan, of Nebraska.
For vice-president, Arthur Sewall, of Maine.

For presidential electors, the same nominees as will appear on the democratic ticket.

| | | | |
|---|---|---|---|
| Governor ...... ..... | Robert E. Lewis.... | Clinton, Mo....... | Lawyer. |
| Lieut. Governor . ... | Abra C. Pettijohn... | Brookfield, Mo.... | Physician. |
| Secretary of State.... | William S. Freeman. | Tuscumbia, Mo.... | Lawyer. |
| State Auditor ....... | John G. Bishop ..... | Kansas City, Mo... | Auditor. |
| State Treasurer ...... | Jacob F. Gmelich... | Boonville, Mo..... | Banker. |
| Attorney General. ... | John Kennish....... | Mound City, Mo... | Lawyer. |
| Railroad and Warehouse Commissioner. | George H. Stille. .. | Unionville, Mo.... | Editor. |
| Judge of the Supreme Court... ......:... | Rudolph Hirzel ..... | Clayton, Mo. ..... | Lawyer. |
| Judge of the St. Louis Court of Appeals... | Roderick E. Rombauer ............ | St. Louis, Mo ..... | Lawyer. |
| Judge of the Kansas City Court of Appeals . .. .. .. .. .. | James S. Botsford... | Kansas City, Mo... | Lawyer." |

It further appears in evidence that the democratic presidential electors were nominated at a state convention held at the city of Jefferson on the fifth day of August and among others John A. Lee, W. T. Jenkins, James E. Hazell and W. N. Evans were chosen by said convention, that afterward said last named four electors resigned from said ticket and the vacancies so created were filled by the democratic state central committee by the appointment of Thomas B. Anderson, James J. Shoecraft, Arcus L. Douglass, and Simeon A. Handy, who had previously been nominated by the state populist convention at Sedalia.

The petition presented to the secretary of state contained the following caption:

"Silver Party Ticket.

"*To Hon. A. A. Lesueur, Secretary of State, Jefferson City, Missouri.*

"The undersigned electors of the state of Missouri, residents of the city of St. Louis therein, pursuant to the election laws of said state, do hereby certify that the persons hereinafter named for nomination are the candidates of the national silver party (which has declared in favor of a distinctly American financial system; and unalterably opposed to the single gold standard; and demand the immediate return to the constitutional standard of gold and silver, by the restoration by this government, independently of any foreign power, of the unrestricted coinage of both gold and silver into standard money at the ratio of sixteen to one, and upon terms of exact equality as they existed prior to 1873; the silver coin to be of full legal tender equally with gold for all debts and dues, public and private; and demand such legislation as will prevent for the future the distinction of the legal tender quality of any kind of money by private contract) for the offices set opposite their respective names herein, to be voted for at the ensuing general election to be held on Tuesday, November 3, 1896, to wit:

State ex rel. v. Lesueur.

| OFFICE. | NAME. | RESIDENCE. | OCCUPATION. |
|---|---|---|---|
| President.......... | .William J. Bryan...Lincoln, Neb..... | | Lawyer. |
| Vice–President ...... | Arthur Sewall......Bath, Maine.... | | Shipbuilder. |
| Presidential   Electors | | | |
| At Large......... | Dewitt C. Allen....Liberty, Mo...... | | Lawyer. |
| At Large....... .... | .Thomas B.Anderson Sedalia, Mo...... | | Jeweler. |
| District 1..... ...... | Christopher C.Fogle Lancaster, Mo.... | | Lawyer. |
| District 2.......... | Gideon F. Rothwell Moberly, Mo..... | | |
| District 3........... | William D.HamiltonGallatin, Mo..... | | Lawyer. |
| District 4 ........... | James J. Shoecraft..Tarkio, Mo....... | | Farmer. |
| District 5 .......... | Wiley O. Cox......Kansas City, Mo.. | | Banker. |
| District 6 .......... | Clement C. Dickin- | | |
| | son.... ..... ...Clinton, Mo...... | | Lawyer. |
| District 7........... | Charles J. Wilkins..Morrisville, Mo... | | Teacher. |
| District 8........... | Albert L. Douglass..Clarksburg, Mo... | | Blacksmith. |
| District 9 .......... | Thomas    Cunning- | | |
| | ham. ..........St. Charles, Mo... | | Lawyer. |
| District 10....... ... | William G. Frye .. St. Louis, Mo.... | | Sec'y Mfg.Co |
| District 11.... ...... | Felix Gunn........St. Louis, Mo.... | | Bookkeeper. |
| District 12........... | Daniel L. Hatton...St. Louis, Mo... | | Grocer. |
| District 13........... | Robert Lamar .... Houston, Mo..... | | Lawyer. |
| District 14........... | Simeon A. Handy..West Plains, Mo.. | | Lawyer. |
| District 15.... ...... | John B. Cole. .....Lamar, Mo. ..... | | Lawyer. |
| Governor.. ......... | Robert E. Lewis....Clinton, Mo .... | | Lawyer. |
| Lieut- Governor ...... | Abra. C. Pettijohn..Brookfield, Mo... | | Physician. |
| Secretary of State  .. | William S. Freeman Tuscumbia, Mo... | | Lawyer. |
| State Auditor ....... | John G. Bishop.....Kansas City, Mo.. | | City Auditor. |
| State Treasurer..... | Jacob F. Gmelich..Boonville, Mo.... | | Banker. |
| Attorney General.... | John Kennish..,.. | Mound City, Mo.. | Lawyer. |
| Railroad   and   Ware- | | | |
| . house Commissioner | George H. Stille....Unionville, Mo... | | Editor. |
| Judge of the Supreme | | | |
| Court.............. | Rudolph Hirzel.....Clayton, Mo. ... | | Lawyer. |
| Judge of the St. Louis | | | |
| Court of Appeals... | Roderick  E.  Rom- | | |
| | bauer...........St. Louis, Mo.... | | Lawyer. |
| Judge of Kansas City | | | |
| Court of Appeals... | James S. Botsford..Kansas City, Mo.. | | Lawyer.'' |

Upon the hearing in this court, counsel for the secretary of state maintained that the ninety-two names to the petition circulated and signed prior to the "fusion" of the electors of the democratic and populist tickets could not be considered in ascertaining whether one thousand electors had petitioned for said "Silver Ticket" as required by section 4763, Revised Statutes, 1889; that it was not competent for the relator or those circulating said petition to cut off all of said petition

save the names attached and affix the mere list to another petition; that if relators thought it was the same in substance it was still their duty to present it without mutilation to the secretary of state who must "*ex necessitate*" determine whether it complied with the statute.

Again it was objected that there were not one thousand electors on said petition who had executed and acknowledged it according to law.

Other facts will be noted, if necessary, in the opinion.

I.  The remedy invoked by relator is *mandamus*. To entitle him to this writ he must have a clear legal right to the specific service which he seeks at the hand of the secretary.  To put the officer in the wrong it must appear that the duty sought to be enforced was one which pertained to his office, and that a proper demand had been made upon him and he had refused to perform it.  These principles are elementary in the use of this writ by the courts.

By the terms of our statute, section 4757, Revised Statutes, 1889, a certificate of nomination by electors must be "executed with the formalities prescribed for the execution of an instrument affecting real estate." By section 2408, Revised Statutes, 1889, the certificate of acknowledgment shall state the act of acknowledgment and that the person making the same was personally known to the officer granting the certificate to be the person whose name is subscribed to the instrument as a party thereto. Unless the petition was properly certified by the requisite number of electors the secretary had no right to file it and place the ticket on the official ballot.  *State ex rel. v. Lesueur*, 103 Mo. 253; *People ex rel. Klinker v. Board Pol. Com'rs*, 31 N. Y. Supp. 469; *People ex rel. Oliver v. Board Pol. Com'rs*, 31 N. Y. Supp. 467.

We consider it too plain for argument that the secretary rightfully refused to count the ninety-two names which had been signed to another and different instrument, and had been cut off and attached to the one presented to him.   To permit this kind of practice would open the door to the grossest frauds, and violate all the analogies of the law which forbids parties to tamper with or make material alterations in written instruments.   The objection is not one merely of form. It is of the very essence of such a petition that it be presented just as the electors signed and acknowledged it.   It might well be, moreover, that an elector would petition for the nomination of a straight partisan ticket composed solely of democrats or republicans who would refuse absolutely to petition for a fusion ticket composed of democrats and populists.   As signed by them the petition called for the electors who would appear on the democratic ticket.   Those electors had been named by the convention and presumably would be on the ticket.   Their consent to a fusion ticket was never asked or obtained and no authority for destroying the petition to which their names had been signed and attaching them to the petition presented to the secretary.   Excluding these ninety-two names the petition contained only one thousand and seventy-four names.

II.   With the list of electors whose names appear on the petitions, we have carefully gone over the certificates of acknowledgment and we find eighty-eight names who did not acknowledge the execution of said instrument.   We have indulged a liberal intendment in favor of many on the principle of *idem sonans* but allowing such, eighty-eight names still remain to which the certificate of acknowledgment can not apply under the most liberal construction.   It is impracticable to set forth each one, but a few will indicate the exceed-

ingly careless manner in which they were certified; thus George Komm was certified as George Commer; W. H. Burton, as W. H. Bustom; C. H. Spear, as C. H. Spencer; George Hendricks, as Joseph Howard; John Merks as John Matthews; N. Farber, as N. Foster; Thos. A. Smoot, as Thos. A. Moore; A. J. Haines, as J. A. Hines; John Fillmore, as John Gilmore; Frank Brainard, as Frank Raynard; J. E. Bruce, as J. E. Price and so on through the list. One list is written almost wholly with lead pencils. It may not be amiss to call the attention of the legislature in this connection to the facility with which petitions can be manufactured if the parties are not required to sign their names in ink and how readily a name may be erased and a different one substituted.

Deducting the eighty-eight unacknowledged names from the list of one thousand and seventy-four and we have left only nine hundred and eighty-six petitioners, or fourteen less than the required one thousand, to make a nomination for a state office.

As the petition was obviously insufficient, it was properly rejected and it becomes unnecessary to enter upon the discussion of whether the petition was not also bad upon its face because there was a mingling of the nomination of Judge Rombauer of the St. Louis court of appeals' district with Mr. Botsford in the Kansas City district. The question which arises upon such a state of facts is whether a purely executive officer is called upon to determine whether it is good as to one, or bad as to both by reason of the unlawful intermingling of the two.

Neither have we the time to re-open the discussion as to the misleading character of the proposed ticket and the palpable want of principle in partisans of one party petitioning candidates to run on a ticket which they avow they do not intend to support and whose polit-

ical code if successful would subvert every plank in their own party's platform. If our election laws en-courage such practices as were openly admitted in the preparation of this petition they are sadly in need of reformation.

:   The secretary properly declined to file the petition and the peremptory writ is denied at the cost of rela-tors. SHERWOOD, MACFARLANE, BURGESS, and ROBIN-SON, JJ., concur in the foregoing opinion. BARCLAY, J., concurs in refusing the peremptory writ. BRACE, C. J., does not sit.