[No. 2044]

## THE STATE OF NEVADA, EX REL. J. F. MILLER, RELATOR, *v.* HARLEY A. HARMON, COUNTY CLERK OF THE COUNTY OF CLARK, STATE OF NEVADA, RESPONDENT.

1. ELECTIONS — NOMINATION BY CERTIFICATE — QUALIFICATIONS OF SIGNERS.

    Under the act of March 13, 1891 (Stats. 1891, p. 40, sec. 4; Rev. Laws, 1836), which provides for nomination of candidates for public office by filing a certificate signed by electors, and under section 6 (Rev. Laws, 1838), which provides that no one shall join in nominating more than one nominee for each office to be filled, a certificate signed by the requisite number of electors is not vitiated by signers subsequently signing another certificate nominating another person for the same office, but duplicate signatures are invalid as to the subsequent certificate.

2. FORFEITURES—PENALTIES.

    Penalties and forfeitures are not favored, unless plainly expressed.

ORIGINAL PROCEEDING for writ of *mandamus*, by the State, on relation of John F. Miller, against Harley A. Harmon, County Clerk of Clark County. **Writ granted.**

The facts sufficiently appear in the opinion.

*Richard Busteed,* for Relator:

It was not the intention of the legislature to throw open the door to fraud. If the clerk has the power claimed by him, he could throw out a perfectly valid certificate after filing by reason of his acceptance for filing of a later one. There would be absolutely no protection to one filing such a prior certificate in good faith, as against a later and fraudulent one accepted for filing at the last moment. Public policy, if there were no other reason, would be against such construction of the statute.

*F. A. Stevens,* for Respondent:

If a signer's name appears upon more than one petition for the same office it cannot be counted for any candidate. (*Southall* v. *Griffith,* 100 Ky. 91, 37 S. W. 577; *O'Connor* v. *Smithers,* 99 Pac. 46, and authorities therein cited; 15 Cyc. 335.)

The general law is to the effect that the officers with whom certificates of nomination are filed are not limited merely to passing upon the form of the certificate, but they may also pass upon the sufficiency. (15 Cyc. 340, note 78.)

*Per Curiam:*

[1] This proceeding presents the sole question of the proper construction of section 6 of "An act relating to elections and to more fully secure the secrecy of the ballot," approved March 13, 1891 (Stats. 1891, c. 40; Rev. Laws, 1838). So much of the section as is involved in this proceeding reads: "No person shall join in nominating, under the provisions of section 4 of this act, more than one nominee for each office to be filled. * * *" Section 4 of the aforesaid act, referred to in section 6, *supra,* makes provision for the nomination of candidates for public office by the filing of a certificate containing certain required information, which "shall be signed by electors residing within the district or political division for which candidates are to be presented equal in number to at least ten per cent of the entire vote cast at the last preceding general election in the state, district, or political division for which the nomination is made."

An agreed statement of facts is filed, from which it appears that the petitioner on October 1, 1912, filed his certificate of nomination as a candidate for the "Independent party" for the office of county commissioner for said Clark County for the long term, to be voted for at the next ensuing general election; that said certificate was signed by 105 qualified electors of said county; that said number of electors constitutes more than ten per cent of the entire vote cast in said county at the last preceding general election; that the said certificate in all other respects was in due form; that thereafter, on the 4th day of October, 1912, and within the time prescribed by law, the certificate of nomination of one J. L. Russell as candidate of the Socialist party for the same office was filed with the respondent; that the certificate of said

Russell was signed by 125 qualified electors of said
county; that the certificate of said Russell was in all
other respects in due form; that the names of 31 of the
signers of the certificate of nomination of the petitioner
appear on the certificate of nomination of said Russell;
that the certificate of nomination of said Russell was not
circulated until after the certificate of nomination of
petitioner had been circulated, signed, and filed with the
respondent; that the respondent has refused and still
refuses to place the name of the petitioner upon the
official ballot, basing his refusal upon the ground that
the 31 electors who signed both said petitions should not
be counted; that, if the said 31 signatures are not
entitled to be counted, the certificate does not contain
the signatures of the requisite ten per cent of qualified
electors.

Counsel for the respective parties have submitted the
following as points in controversy:

"(1) Whether or not the county clerk, defendant, has
the right to eliminate from the count of the signers to
plaintiff's certificate of nomination the 31 names appear-
ing upon the certificate of nomination of both plaintiff
and J. L. Russell.

"(2) If so eliminated, is the county clerk justified in
refusing to publish the nomination of plaintiff, and in
omitting the plaintiff's name from the ballot as a candi-
date at the general election for said office of long-term
county commissioner?

"(3) Whether the fact that plaintiff's certificate of
nomination was circulated, signed, and filed prior to the
circulation of the certificate of nomination of J. L.
Russell would prevent the county clerk from eliminating
the duplicated names from the certificate of nomination
of plaintiff."

We think the language used in section 6, *supra,* means
only that, when an elector has signed a certificate of
nomination of a candidate for a public office representing
a certain party or principle, he is disqualified from there-
after signing another petition of nomination of another

candidate for the same office, and he may also be prohibited from nominating the same candidate for the same office, but as representing some other party or principle.    There is no specific provision in the statute making a duplicate signature of an elector void as to all certificates, as is provided in the statute of Kentucky and referred to in the case of *Southall* v. *Griffith,* 100 Ky. 91, 37 S. W. 577, cited.

The case of *O'Connor* v. *Smithers,* 45 Colo. 23, 99 Pac. 46, is more nearly in point.   The statute of Colorado, involved in the latter case provides: "No person shall sign more than one certificate of nomination for any office." In the latter case the facts were that two certificates for the nomination of certain identical legislative candidates (one certificate designated as "Business" ticket, and the other "Anti-Guggenheim" ticket) were tendered the secretary of state at the same time.   The law of Colorado required that each certificate be signed by not less than 100 qualified electors.   Each certificate tendered was signed by 115 names, but upon examination the court found that not less than 46 names were the same upon each certificate.   Considering the law of the case, the court said: "An elector, once having exercised the right to join in a certificate as an individual nominating a candidate for office under some name adopted by the signers, cannot join in nominating the same person for the same office under some other name. Having exercised the right once, he is precluded from exercising it again under such circumstances.   The purpose of the statute in allowing nominations by individuals was to confer upon electors the right to place candidates in nomination under some party name which they might choose representing a principle which they desired to support at the polls; but it was never intended (and, in fact, is inhibited by the statute last above referred to) that they could exercise this right indefinitely, by duplicating the nomination of candidates for the same offices to be voted for at the same election under different names.   If the rule were otherwise, the official

ballot could be made to contain the names of the different parties under which a candidate had been nominated to an extent which would render it more confusing and unintelligible than it now is, when all the protection which the law affords against such conditions is enforced. In short, the law is that an elector, having once joined in nominating a candidate by a certificate of individuals, cannot thereafter join in nominating that same candidate in the same way for the same office under another party name, to be voted for at the same election, for the reason that, having once exercised the right of choice of candidates and principles, so far as nominations are concerned, he cannot exercise it again. Authorities sustaining this conclusion are *In re Smith,* 41 Misc. Rep. 501, 85 N. Y. Supp. 14; *Phillips* v. *Curtis,* 4 Idaho, 193, 38 Pac. 405; *Southall* v. *Griffith,* 100 Ky. 91, 37 S. W. 577. From this conclusion it is apparent that the certificates nominating condidates for the legislative and senatorial districts did not contain the requisite number of names to make a nomination by individuals, for the obvious reason that all duplicate names on these certificates for the same candidates for the same office must be eliminated. Hence they were invalid. (*Southall* v. *Griffith, supra; State* v. *Lesueur,* 136 Mo. 452, 38 S. W. 325; *In re Official Ballot,* 99 Minn. 517, 109 N. W. 1; *In re Horan,* 108 App. Div. 269, 95 N. Y. Supp. 607.)"

It was necessary to eliminate from consideration all duplicate names upon the two certificates considered in the Colorado case, for the reason that the two certificates "were tendered the secretary of state at the same time." We do not, however, interpret the Colorado court as holding that, in every case where an elector signs more than one certificate, his signature to all should be disregarded. If the court intended to so hold, we would not be able to agree in its construction of the statute. An elector may make one valid signature to one petition for the nomination of a candidate for a particular office. Having signed one such certificate, he becomes disqualified to sign

another for the same office, and, if he does so again sign, such signature should not be counted; but such subsequent signature does not render the first void. The provision that no person shall join in nominating more than one nominee for each office to be filled certainly implies and allows an elector to join in nominating one nominee for the office; but, as soon as he has joined in nominating one nominee, the prohibition attaches against his joining in the nomination of any other person for the same office.

[2] Penalties and forfeitures are not favored, unless plainly expressed. There is no provision in our statute, as in some states, that if an elector signs the nominating certificates of two persons for the same office the signatures of both will be void. In this case the certificate of the petitioner, Miller, was signed by the requisite number. of electors and filed before the petition of Russell was ever circulated, and several days before it was filed. Miller had done everything required by law to entitle his certificate to be filed and to have his name placed upon the ballot. If, after his certificate had been properly signed and filed, it could be invalidated because some of the signers later signed other petitions, when there is no statute warning him that, unless he obtained a surplus of signers larger than any that might be induced by any means to sign other petitions for the same office, he could have his certificate invalidated, no candidate would be safe; for he might be deprived of the nomination after he had filed his certificate with the requisite number of proper signers by an opposing candidate who could file a certificate bearing enough original signers to nominate him, with the addition of enough of the signers on the first certificate signed and filed to bring the qualified names on it below the required number. All duplicate signatures were void so far as the petition of Russell was concerned, but that did not make invalid the same signatures on the relator's petition, which were valid when signed. We appreciate that cases might arise

when it would be difficult to tell upon which petition the name should be counted.

We do not wish to be understood as holding that where two petitions are presented to the clerk, which have not the required number of signers without counting the names of the electors who have signed both, the clerk may not refuse to file either until some showing is made that enough of the signers were first signers; nor that, if two petitions are filed or offered for filing together or at different times for the same office, the clerk may not refuse to certify the name or names to the ballot until such showing is made. Where it can be determined to which petition the signature of an elector signing more than one certificate was first appended, it should be credited to that petition and disregarded as to all others.

Under the requirements of a statute reading: "No person shall join in nominating more candidates for any office than there are persons to be elected thereto," Spencer, J., in *Re Smith*, 41 Misc. Rep. 501, 85 N. Y. Supp. 14, said: "I think the intent of this provision is plain that a man, having once joined in nominating a candidate, shall not thereafter join in nominating another for the same office at that election; * * * that if any person joined in the certificate who had joined in nominating another candidate, his signature to the certificate is of no avail, and must be disregarded."

The certificate of nomination of the petitioner is valid, and the respondent is directed and required to treat the same as all other certificates of nomination recognized by him as valid.